396 . Appellate Courts of Illinois.

Hart v. Northwestern Trust & Savings Bank, 191 Ill. App. 396.

## R. Hart et al., Plaintiffs in Error, v. Northwestern Trust & Savings Bank, Defendant in Error.

### Gen. No. 20,077.

Principal and Agent, § 131*—*power of agent to collect and give receipt.* Where an agent was sent by his principal to a bank to collect for materials furnished by the principal on a building and the bank drew a check on itself and handed it to the agent, who then indorsed it with his principal's firm name, indicating that it was by himself, and disappeared, *held* the principal could not recover the sum in question from the bank, as the delivery of the check to the agent and the payment of it by the bank constituted one transaction amounting to a collection, the check being an acknowledgment of indebtedness and the agent's indorsement a receipt of payment.

Error to the Municipal Court of Chicago; the Hon. Henry C. Beitler, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed February 4, 1915.

Baker & Holder, for plaintiffs in error.

David & Zillman, for defendant in error.

Mr. Presiding Justice Fitch delivered the opinion of the court.

In August, 1912, the owner of a building then under construction in Chicago was indebted to the plaintiffs in error, partners doing business under the firm name of Hart & Page Lime Company, in the sum of $285, for the value of certain building materials furnished by them. The owner of the building had arranged with the defendant bank for a loan, out of which the amounts due for materials furnished were paid to the several contractors upon their filing with the bank written waivers of their lien rights under the Mechanic's Lien Act. Plaintiffs in error had in their employ a man named Ross. His duties were somewhat general

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

in character. He attended to receiving material from freight cars, receipted the freight bills, directed the unloading of the cars, helped to unload them, attended to the deliveries of material, employed drivers, and supervised the manner of loading, the number of teams and number of trips made by them; in the absence of Mr. Hart, who was the general manager of plaintiff's Chicago office, he took charge of the office; and he did whatever else he was directed to do by Mr. Hart.

On August 31, 1912, Hart sent Ross to the bank to collect the bill due for materials furnished to the building above mentioned. Before going to the bank for this purpose, Ross prepared a written waiver of lien, and signed it, in the presence and with the approval of Hart, in the name of the firm, "per E. F. Ross." He had been in the habit of making out and signing such waivers, with the knowledge and consent of the plaintiffs in error. Ross then went to the owner, got an order from him for the payment of the bill, and went with the owner to the bank, where he presented the lien waiver and order, and asked for the money. The teller in charge of the loan department of the bank made out a check of the bank upon itself for the amount due, payable to the order of the plaintiffs in error, had it signed by the vice-president of the bank, and handed it to Ross. Ross asked for the money, and after indorsing the check in the name of the plaintiffs, "per E. F. Ross," the money was paid him by the paying teller. Ross then disappeared, and the money was never paid to the plaintiffs. Hart testified that he did not know what became of Ross, and that no effort had been made to find him. Plaintiffs sued the bank for the amount of the check, claiming the bank had cashed the same upon an unauthorized indorsement. After hearing the evidence above stated, the court directed a verdict for the defendant. The plaintiffs sued out this writ of error.

The plaintiffs admitted, both on the trial below and

in this court, that when Ross was sent to the bank he was authorized to collect the $285 which the bank paid him. It is claimed, however, that his authority to collect did not authorize him to indorse the check which the bank gave him—in other words, that his authority as the agent of the plaintiffs ceased when he received the check,—and that therefore the bank remained liable to the plaintiffs, notwithstanding the payment to Ross. The contention is extremely technical, and we think it is without substantial merit. Ross had no authority to receive a check in payment of the account, and when the check was handed to him he did not accept it in payment, but at once asked for the money. The delivery of the check to him and the payment of it by the bank upon his indorsement all constituted one transaction, and amounted to a collection by Ross of the amount due. The check was not that of a depositor, drawn against his deposit in the bank. It was the bank's own check, drawn upon itself. It was a mere acknowledgment of indebtedness, like the cashier's check in *Clark v. Chicago Title & Trust Co.*, 186 Ill. 440, and the indorsement of Ross was, in effect, but a simple receipt for such indebtedness. The purpose the bank had in view in giving the check to Ross and requiring him to indorse it before paying over the money was, evidently, to preserve a convenient record of the transaction by retaining the cancelled check as a voucher for the payment.

In the view we take of the facts and the legal effect of the same, we deem it unnecessary to discuss the contention of plaintiff's counsel that authority to receive a check does not include authority to indorse it.

For the reasons stated, the judgment of the Municipal Court was correct, and it will be accordingly affirmed.

*Affirmed.*